**RESOLUTION TRUST CORPORATION, Appellee,**

**v.**

**George H. LIPTON, Appellant.**

**RESOLUTION TRUST CORPORATION, Appellee,**

**v.**

**AIRLAKE GROUP, etc., Appellant.**

**Nos. 92–1054, 92–1072.**

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 9, 1992.

Decided Jan. 14, 1993.

Rehearing Denied March 2, 1993.

---

Paul M. Floyd, Minneapolis, MN, argued (Joseph W. Anthony, on the brief), for appellant George Lipton.

Robert M. Halvorson, New Ulm, MN, argued (Christopher J. Dietzen and Lisa A. Gray, Bloomington, MN, on the brief), for appellant Airlake Group.

James J. Bertrand, Minneapolis, MN, argued (James G. Bullard, on the brief), for appellee Resolution Trust Corp.

* The HONORABLE BRUCE M. VAN SICKLE, Senior United States District Judge for the Dis-

Before JOHN R. GIBSON, and MAGILL, Circuit Judges, and VAN SICKLE *, Senior District Judge.

VAN SICKLE, Senior District Judge.

This action arises out of a loan agreement between Occidental Nebraska Federal Savings Bank (Occidental) and Airlake Group (Airlake). Airlake defaulted on the loan which was secured by a mortgage. Occidental commenced foreclosure proceedings. Pursuant to the guarantor agreements executed by partners owning Airlake, including George H. Lipton, several partners were sued individually due to Airlake's default. In its capacity as successor/conservator for Occidental, Resolution Trust Corporation (RTC) has been substituted for Occidental. Lipton appealed this action on December 9, and Airlake appealed on December 23. Both appellants allege that the foreclosed land was agricultural land within the definition under section 582.042 of the Minnesota Statutes. Therefore, appellants contend that notice was required in accordance with that statute. The district court held that the notice requirement was not necessary because it was "directory and not mandatory." We affirm on other grounds.

BACKGROUND

On November 25, 1985, Occidental agreed to loan Airlake up to $10 million in exchange for a promissory note and a mortgage. Occidental advanced Airlake $8.5 million. The note contained an acceleration clause which provided that Occidental could demand the entire unpaid principal and all accrued interest to be paid immediately and could foreclose on the mortgage or realize upon any other security in the event of a default.

Occidental also obtained additional security. Individuals, such as Appellant Lipton, most of whom are partners in Airlake, acted as guarantors of the Airlake loan. The clauses providing for the guarantees included:

trict of North Dakota, sitting by designation.

Guarantors hereby absolutely and unconditionally guaranty [sic] to lender ... the due and punctual payment of all principal and interest due under the Loan Documents....

.    .    .    .    .

Guarantors hereby waive any and all legal requirements that Lender ... shall institute any action ... against Borrower ... as a condition precedent to bringing an action against Guarantors upon this Guaranty.

.    .    .    .    .

Guarantors shall not be released by any act or thing which might, but for this provision of this Guaranty, be deemed a legal or equitable discharge of a surety....

After Airlake failed to pay interest installments on July 1 and August 1, 1987, Occidental notified Airlake in writing that Airlake was in default and that Occidental was exercising its option to accelerate the loan payments. Airlake failed to make the payments, and Occidental foreclosed on the mortgage and sued the partners of Airlake as the guarantors, jointly and severally.

George Lipton was originally named as a defendant with the other guarantors; however, service was not properly effected. Therefore, RTC brought a second suit against Lipton alone, seeking to hold him personally liable pursuant to the terms of the guarantee.

## FACTS ON APPEAL

The facts introduced at the district court trial revealed that Airlake retained the laborers and machinery from the previous owner. These hired hands actually did farm the land in 1986 and 1987.

Although farm income was not a major source of income for Airlake, the partnership did report income from farming in the years of 1986 and 1987 in excess of $20,-000.[1] Airlake did not claim that any of its 1988 income was from farming or any agricultural endeavor in its tax return.[2] They only indicated that Airlake received income from rental property.

## DISCUSSION

The district court concluded that the notice was not necessary because the notice requirement was "directory and not mandatory." Before the court can even reach that question, it must determine whether the debtors fall into one of the categories provided in the statute. If they are not within one of the statutory definitions, the court does not need to determine whether the notice requirement is "directory" or "mandatory."

There are two main issues that this court must address on appeal. The first is whether Airlake is a qualified debtor under Minnesota Statutes section 583.24.[3] The second issue is whether Appellant Lipton is entitled to notice as required by Minnesota Statutes section 583.20 et seq.

### 1. Whether Airlake is a qualified debtor under Minnesota Statutes section 583.24.

■ Minnesota Statutes section 582.042 states that "If a mortgage on real property that is agricultural land is foreclosed and the property contains separate tracts, the person in possession of the real property

---

1. Minnesota Statute section 583.24(b) requires that a debtor obtain at least $20,000 from agricultural products. *See, infra,* note 3. Airlake claimed $105,232.84 from agricultural products in 1986 and $23,640 in 1987. (Airlake's Brief at 5 & 6).

2. In 1988 Airlake does not indicate that any income came directly from farm products. (Airlake's Brief at 5 & 6). Instead the applicable income was cash rent. (RTC's Brief at 9). *See also, infra,* note 5 and accompanying text.

3. Section 583.24 in relevant part states:

Subd. 2. Debtors. (a) Except as provided in paragraph (b) the farmer-lender mediation act applies to a debtor who is:
(1) a person operating a family farm as defined in section 500.24, subdivision 2;
(2) a family farm corporation as defined in section 500.24, subdivision 2; or
(3) an authorized farm corporation as defined in section 500.24, subdivision 2.
(b) The farmer-lender mediation act does not apply to a debtor who owns and leases less than 60 acres if the debtor has less than $20,-000 in gross sales of agricultural products the preceding year.
Minn.Stat. § 583.24 subd. 2.

must be notified by the foreclosing mortgagee that the separate tracts may be sold and redeemed separately." Minn.Stat. § 582.042.

#### a. Airlake is not incorporated.

In order to comply with the requirements of Minnesota Statutes section 582.042, the debtors must either operate a "family farm," "family farm corporation," or "authorized farm corporation." See Minn.Stat. § 583.24. Since two of the possible ways to qualify as a debtor require that one be a corporation and Airlake is not a corporation, the only remaining way for Airlake to qualify as a debtor under the statute is to qualify as a "family farm." See Minn.Stat. § 583.24. Minnesota Statutes section 500.24 provides that a "family farm" is an "unincorporated farming unit owned by one or more persons residing on the farm or actively engaging in farming." Minn. Stat. 500.24(b). Therefore, Airlake must have at least one person who either lives on the farm or farms the land. Rengstorf v. Richards, 417 N.W.2d 138, 140 (Minn.App. 1987). See also Minn.Stat. 500.24(b).

#### b. Airlake is not "residing on the farm".

Airlake alleges that it is properly a family farm under the applicable definition. The first option to comply with the definition of family farm provides that the farmer must be "residing on the farm...." Minn.Stat. § 500.24(b). No evidence was introduced to indicate that any of the partners at Airlake, including Appellant Lipton, resided on the agricultural land or that the principal place of business for Airlake was on the agricultural land. Therefore, Airlake did not meet the requirements of a family farm under the first possible definition.

#### c. Airlake is not "actively engaged in farming".

The second option in the definition of a "family farm" requires that one be "active-ly engaged in farming." See Minn.Stat. § 583.24. Airlake is not. Airlake did not claim income from the farming operations in the year preceding the litigation. Furthermore, Airlake's owners do not go out on the tractors and farm the property nor have they hired people to farm the property. Airlake has cash rented the land to Michael Streiff.[4] The income that Airlake receives from the land is rental income and not contingent upon whether the agricultural products are produced. It has failed to fulfill the definition of a family farm under the second possible definition.

#### d. Airlake did not have $20,000 in gross sales of agricultural products in the preceding year.

■ According to the statute, even if Airlake had met all of the necessary elements to be considered a "family farm," Airlake would still be excluded from the notice provision because it did not have the gross proceeds of $20,000 from agricultural products in the year preceding the litigation. Although Airlake had received gross proceeds in excess of $20,000 from agricultural products in 1986 and 1987, the year preceding this litigation Airlake only received rental income. No income was derived directly from agricultural products. Therefore, Airlake does not qualify as a debtor under section 583.24(b) of the Minnesota Statutes.

#### 2. Whether Appellant Lipton is entitled to notice as required by Minnesota Statutes section 583.20 et seq.

■ Basic to Appellant Lipton's appeal is the qualification of Airlake as a family farm. His rationale is that as one of the owners of Airlake, he is entitled to notice. His alternative argument alleges that as the guarantor for a family farm, he is entitled to notice. Since both of Appellant Lipton's arguments are contingent upon establishing that Airlake is a family farm,

---

4. Farmland is commonly rented in two different ways. The first way is based on a percentage of the crops, usually two-thirds to the farmer/renter and one-third to the landowner. The second way is for the farmer/renter to provide a straight cash payment each year for the use of the land. This second way is the arrangement that Mr. Streiff had with Airlake.

and appellant has failed to do so, Appellant Lipton's appeal must also fail.

For these reasons, we affirm.